James C. CLARK, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–1466

United States Court of Veterans Appeals.

Argued Sept. 17, 1991.

Decided Feb. 7, 1992.

As Amended Feb. 11, 1992.

Michael P. Horan, Washington, D.C., for appellant.

David W. Engel, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, James C. Clark, seeks review of an August 9, 1990, Board of Veterans'

Appeals (BVA or Board) decision which denied appellant an increased evaluation for his service-connected Post Traumatic Stress Disorder (PTSD). Appellant has not shown that the changed rating schedule, which became effective in February 3, 1988, was not applied to him in the June 1, 1989, rating decision. Therefore, we affirm the BVA decision.

## I. BACKGROUND

Appellant served on active duty in the United States Air Force from November 22, 1965, to February 25, 1969, and again from November 4, 1971, to October 5, 1972. Appellant's service included duty in the Republic of Vietnam from July 1967 to June 1968. Appellant first attempted to obtain service connection for his psychiatric conditions in 1972. However, he was unsuccessful until February 27, 1989, when, in a BVA decision, he was granted service connection for PTSD. R. at 60–66.

Before giving appellant a disability rating, the Veterans' Administration (now Department of Veterans Affairs) (VA) conducted a psychiatric examination on April 19, 1989, at the VA Medical Center in Dallas, Texas. R. at 68–71. Dr. Laszlo Varga, the examining physician diagnosed appellant as having a "[b]orderline personality disorder with much anxiety and emotional lability" and "PTSD, undoubtedly present with mild to moderate degree." R. at 70–71. On June 1, 1989, the rating board gave appellant the following ratings for his service-connected PTSD:

100% from 8–7–85 (Paragraph 29)

50% from 1–1–86

100% from 5–15–86 (Paragraph 29)

50% from 9–1–86

100% from 4–22–88 (Paragraph 29)

50% from 9–1–88

R. at 73. The one-hundred-percent ratings reflect hospitalization and convalescent time. See 38 C.F.R. § 4.29 (1991).

Dissatisfied with the assigned ratings, appellant, through his representative, filed a Notice of Disagreement (NOD) to the June 1, 1989, rating decision. Appellant's NOD contained two issues. The first dealt with a claim of clear and unmistakable error alleged to have been made in the December 11, 1972, rating decision which was the first denial of service connection for appellant. R. at 78. On December 5, 1989, the rating board denied appellant's request for retroactive benefits to December 1972. R. at 84. The second issue dealt with the June 1, 1989, rating decision. Appellant believed he should have received a higher rating. R. at 79. Based on the physician's notes from the April 19, 1989, examination, appellant stated that he should be considered "severely" impaired because of the perceived fear he imposed on the examiner. *Id.* Appellant sought a one-hundred-percent rating. A Statement of the Case was sent to appellant on December 4, 1989. R. at 82–83. The Board upheld the denial of an increase in appellant's rating and remanded the issue as to whether there was clear and unmistakable error in the December 1972 rating decision to the VA Regional Office (VARO) for appropriate action. *James C. Clark,* BVA 90–27407 (Aug. 9, 1990). Appellant filed a timely Notice of Appeal to this Court. The Court has jurisdiction to hear this case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

■ Because appellant's claim of clear and unmistakable error was not addressed by the Board but instead was remanded, that claim is not final and therefore cannot be heard by the Court. *See* 38 U.S.C. § 7252(a). Furthermore, the Court finds that the two claims are not so inextricably intertwined that the current claim must be dismissed without prejudice until the other claim is decided. *See Harris v. Derwinski,* 1 Vet.App. 180 (1991).

On appeal to this Court, appellant, instead of claiming a rating of one-hundred-percent, claims that he is entitled to a seventy-percent rating for his PTSD. He asserts in his brief that the Secretary did not apply the revised and liberalized schedular criteria for the evaluation and assignment of disability ratings for neuropsychiatric disorders adopted by the VA on February 3, 1988. Appellant's theory is premised on

the fact that the rating board "impliedly" found that appellant's PTSD caused a "severe" industrial impairment instead of a "considerable" industrial impairment for the time period between January 1986 and February 1988. Appellant argues that because the fifty-percent rating under the old rating criteria required a finding of "severe," and that under the new rating criteria a finding of "severe" requires a seventy-percent rating, he should now be rated seventy-percent instead of fifty-percent. A fifty-percent rating now requires a finding of "considerable." However, appellant has pointed to no error of law in the BVA opinion which would support his contention that the rating board applied the old rating criteria in making its decision. For the reasons set forth below, the Court finds that the correct rating criteria were applied in the June 1, 1989, rating decision and in the August 9, 1990, BVA decision.

38 C.F.R. § 4.132, Diagnostic Code 9400 (1987), the old rating schedule, provided the following categories for rating fifty and seventy-percent disabilities:

70 percent:
Ability to establish and maintain effective or favorable relationships with people is **seriously** impaired. The psychoneurotic symptoms are of such severity and persistence that there is **pronounced** impairment in the ability to obtain or retain employment.

50 percent:
Ability to establish or maintain effective or favorable relationships with people is **substantially** impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in **severe** industrial impairment.

(Emphasis added). That rating schedule was revised in 1988 to reflect the following changes in the current rating schedule found in 38 C.F.R. § 4.132, Diagnostic Code 9411 (1991). The current schedule provides for the following categories for ratings of seventy and fifty-percent disabilities:

70 percent:
Ability to establish and maintain effective [sic] or favorable relationships

with people is **severely** impaired. The psychoneurotic symptoms are of such severity and persistence that there is **severe** impairment in the ability to obtain or retain employment.

50 percent:
Ability to establish or maintain effective or favorable relationships with people is **considerably** impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in **considerable** industrial impairment.

38 C.F.R. § 4.132 (emphasis added).

Although the June 1, 1989, rating decision, which took place more than a year and a half after the new criteria became effective, did not state which criteria the rating board used in making its decision, the Statement of the Case, issued on December 4, 1989 did. In it, the VARO drew almost verbatim from the new rating schedule when discussing which ratings were applied. Appellant was told that

When by reason of the psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in **considerable** industrial impairment and the ability to establish or maintain effective or favorable relationships with people is **considerably** impaired, an evaluation of 50 percent may be assigned. If the condition results in **severe** impairment of ability to establish and maintain effective or favorable relationships with people, and psychoneurotic symptoms are of such **severity** and persistence as to cause severe impairment in the ability to obtain or retain employment, an evaluation of 70 percent is in order.

R. at 83 (emphasis added). Under the "DECISION" section of the Statement of the Case, appellant was informed that the rating board did not find that an evaluation in excess of fifty-percent was warranted. *Id.*

■ This is not a case where appellant was previously rated under the old rating schedule criteria and then appealed to the BVA after the new regulation went into effect. Here, appellant, although reopening his claim on August 9, 1985, was not

granted service connection until 1989. The schedular rating criteria are only applied after service connection is granted. By 1989, there is no basis for an assumption that the rating board would not apply the new rating criteria.

The Board did not specifically address this schedular rating question. However, in assessing whether appellant deserved a rating of greater than fifty-percent, the Board stated:

> The 1989 examination disclosed that the veteran had terminated employment in 1983, and was in receipt of Social Security benefits. He was divorced. No detailed information was reported as to any adverse impact of his psychiatric symptomatology on his social functioning. Although [PTSD] was diagnosed, the primary diagnostic impression was borderline personality disorder with much anxiety and emotional lability. The above clinical description of the veteran's psychiatric symptoms, no matter how classified, does not lead the Board to conclude that increased impairment has been demonstrated by the evidence of record. [Appellant] undoubtedly continues to experience exacerbations of psychiatric symptoms which have included elements of [PTSD], but **have not been shown to have increased in severity or to be compatible with severe social and industrial inadaptability which would warrant the next higher evaluation of 70 percent.** There does not exist a question as to which of two evaluations would more properly take into account the severity of [PTSD] as to warrant the assignment of a higher rating under the criteria of 38 C.F.R. 4.7.

*Jones,* BVA 90–27497, at 4–5 (emphasis added). Thus, even though not explicitly stating that the new rating criteria were used, the Board stated its reason for affirming the rating decision in language paralleling that of the new rating criteria. Appellant's own belief that his condition is more "severe" than "considerable" is not enough to warrant a change in ratings. The Court finds that the BVA decision satisfies the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)). *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).

In *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991), the Court stated that "where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should and [the Court held] will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so." Here, the new rating criteria are most favorable to appellant. Under the old rating criteria and according to the findings of the rating board, it is apparent that appellant probably would have been rated only thirty-percent. The Court does not, at this time, need to address whether the award of retroactive benefits is appropriate.

### III. CONCLUSION

The Court finds that new schedular rating criteria were applied in the June 1, 1989, rating decision to grant appellant a fifty-percent rating for his service-connected PTSD. The Court holds that appellant has not demonstrated that the Board committed either factual or legal error which would warrant the reversal of its decision not to award an increased evaluation for appellant's service-connected PTSD. Therefore, the BVA decision of August 9, 1990, is AFFIRMED.